WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DOMINIQUE WILSON,                    )
                                     )
                        Plaintiff,   )
                                     )
        vs.                          )
                                     )
KILOLO KIJAKAZI, Acting Commissioner of )
Social Security,                     )
                                     )          No. 3:20-cv-0257-HRH
                        Defendant.   )
_____)

O R D E R

        This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f.  Plaintiff

Dominique Wilson has timely filed her opening brief[1] to which defendant Kilolo Kijakazi

has timely responded.[2]  Oral argument was not requested and is not deemed necessary.

Procedural Background

        On October 24, 2017, plaintiff filed applications for disability benefits under Title II

and Title XVI, alleging that she became disabled on October 24, 2015.  However, plaintiff

_____

        [1]Docket No. 24.

        [2]Docket No. 28.

-1-

amended her alleged onset date of disability to May 1, 2016 at the administrative hearing.[3] Plaintiff alleges that she is disabled due to anxiety, depression, mood disorder, epilepsy and seizure disorder, late effects of cerebral vascular accident, chronic back pain and lumbar spine disorder, late effect of a stroke, nerve issues, ulnar nerve lesion, cubital tunnel syndrome, diabetes, and osteoarthrosis. Plaintiff's applications were denied, and she requested a hearing. After an administrative hearing on January 17, 2020, an administrative law judge (ALJ) denied plaintiff's applications. On August 14, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's February 10, 2020 decision the final decision of the Commissioner. On October 13, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

<u>General Background</u>

Plaintiff was born on September 2, 1970. She was 45 years old on her alleged onset date of disability. Plaintiff has an eleventh grade education. Plaintiff's past relevant work includes work as a sales clerk, a cook, and a cashier.

<u>The ALJ's Decision</u>

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2021."[4]

---

[3]Admin. Rec. at 37.

[4]Admin. Rec. at 21.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since the amended alleged onset date of May 1, 2016. . . ."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: history of transient cerebral ischemic attack (2013); epilepsy; migraine headaches; osteoarthritis of the hips; lumbar spine degenerative disc disease; [and] unspecified mood

---

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin Rec. at 12.

-3-

disorder. . . ."[7] The ALJ found that plaintiff's high blood pressure, high cholesterol, diabetes, asthma, anemia, GERD, fibromyalgia, mild obesity, and chronic kidney disease were nonsevere.[8] The ALJ also found plaintiff's history of substance abuse to be nonsevere as it was in sustained full remission.[9]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[10] The ALJ considered Listings 11.04 (vascular insult to the brain) and 12.04 (depressive, bipolar and related disorders).[11] The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations as to understanding, remembering or applying information; moderate limitation as to interacting with others; moderate limitations as to concentrating, persisting or maintaining pace; and moderate limitations as to adapting or managing oneself.[12]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th

---

[7]Admin. Rec. at 12-13.

[8]Admin. Rec. at 13.

[9]Admin. Rec. at 14.

[10]Admin. Rec. at 14.

[11]Admin. Rec. at 14.

[12]Admin. Rec. at 14-15.

Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can stand and walk up to 4 hours in an 8-hour day. She can sit up to 6 hours in an 8-hour day. She can occasionally push and pull with the bilateral upper extremities. She can occasionally climb ramps and stairs, as well as, occasionally stoop, kneel, crouch and crawl. She can never climb ladders, ropes, or scaffold. She can frequently reach, including overhead, bilaterally. She must avoid moderate exposure to excessive noise, fumes, odors, dusts, and gases, as well as, bright flashing lights. She must avoid all exposure to unprotected heights and hazardous machinery. She is further limited to simple, routine tasks and similar type instructions of those. She can have occasional decision-making and changes in the work setting with no fast-paced production type of work. She can have no interaction with the general public and can occasionally interact with coworkers and supervisors. The work setting would not be such where there would be the availability of substances, legal or illegal, such as in the hospitality industry or medical facilities. The claimant would use a hand-held assistive device for prolonged ambulation.[13]

The ALJ discounted plaintiff's pain and symptom statements based on plaintiff's "own admissions" and because plaintiff's statements were inconsistent with her daily activities.[14]

The ALJ found "Dr. Dhiman's medical expert opinion[15] to be overall persuasive

---

[13]Admin. Rec. at 15-16.

[14]Admin. Rec. at 19.

[15]Dr. Dhiman opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; could sit for six hours; could stand for one hour; could walk for one hour; would need to use a hand-held assistive device for walking/standing; could occasionally
(continued...)

-5-

except as to standing and walking as that restriction was inconsistent with the claimant's demonstrated ability to spend most of her time standing during her volunteer work at the cat rescue."[16] The ALJ found the opinion of Dr. Merrill[17] to be "somewhat persuasive[.]"[18] The ALJ found Dr. Buechner's medical expert opinion[19] persuasive.[20] The ALJ found Dr.

---

[15](...continued)
push/pull, climb ramps/stairs, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; could frequently reach waist to chest and above the shoulder; would have no restrictions as to handling, fingering, and feeling, should avoid moderate and concentrated exposure to pulmonary irritants, including fumes, odors, dust, and gases; should avoid working at unprotected heights and hazardous machinery; and could occasionally drive. Admin. Rec. at 43-44, 47.

[16]Admin. Rec. at 20.

[17]On February 28, 2019, Jeffrey Merrill, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to push/pull, climbing ramps/stairs, balancing, kneeling, crouching, and crawling; could never climb ladders/ropes/scaffolds; could frequently stoop; and should avoid concentrated exposure to hazards. Admin. Rec. at 92-93.

[18]Admin. Rec. at 20.

[19]Dr. Buechner opined that plaintiff had moderate limitations in understanding, remembering, and applying information; generally moderate limitations but sometimes marked limitations in terms of interacting with others; moderate limitations as to concentration, persistence, and pace; and moderate limitations in terms of adapting and managing the self. Admin. Rec. at 51. Dr. Buechner opined that plaintiff would be limited to "no contact with the public and no constant teamwork. Probably just occasional contact with coworkers and supervisors. . . . [L]imit[ed] to routine tasks and . . . moderately simple instructions, routine instructions. . . . [L]ow stress environment . . . where there aren't high productivity requirements." Admin. Rec. at 52-53. Dr. Buechner opined that plaintiff should not work in the hospitality industry or healthcare due to the availability of substances in such work environments and changes in the work setting should be limited. Admin. Rec. at 53-54.

[20]Admin. Rec. at 20.

Gonzalez's opinion[21] to be "somewhat persuasive."[22]  The ALJ found Dr. Barnes' opinions[23]

---

[21]On February 28, 2019, Dr. Frank Gonzales opined that plaintiff had moderate limitations as to understanding, remembering, or applying information; interacting with others; concentrating, persistence or maintaining pace; and adapting or managing self. Admin. Rec. at 89.  Dr. Gonzales opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.  Admin. Rec. at 94-96.  Dr. Gonzalez opined that plaintiff was moderately limited in her ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  Admin. Rec. at 94-96.  Dr. Gonzales opined that plaintiff's concentration, persistence, or pace would be "diminished at times due to psych symptoms, however, [she] retains the ability to maintain attention/concentration sufficient to complete simple repetitive tasks and familiar detailed tasks." He opined that plaintiff could "manage cursory contacts with the public and coworkers and can accept supervision delivered in a normative manner" and "complete predictable routines and manage usual demands in such a setting."  Admin. Rec. at 95.

[22]Admin. Rec. at 21.

[23]On June 21, 2018, Dr. Barnes opined that plaintiff could not work full-time but could work part-time for 4 hours per day and would need to alternate sitting and standing. Admin. Rec. at 1493.  On August 13, 2018, Dr. Barnes opined that plaintiff was unable to work full-time but could work part-time, that she could sit, do slow-paced work, have minimal contact with people, could not stand for any length of time, and that plaintiff "takes multiple medications that can effect her cognitive functioning."  Admin. Rec. at 1488-1489. On January 17, 2019, Dr. Barnes opined that plaintiff could not work full-time, could work 4 hours per day, and would need to alternate sitting and standing.  Admin. Rec. at 1474. On

(continued...)

-7-

unpersuasive.[24]  The ALJ also found the opinions of PAC Moore, ANP Brock, and Dr. Rose unpersuasive.[25]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[26]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform. . . ."[27]  The ALJ found that plaintiff could work as an electrical accessories assembler, a routing clerk, or a document preparer.[28]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from the amended alleged onset date of May 1, 2016, through the date of this decision. . . ."[29]

### Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of

---

[23](...continued)
July 11, 2019, Dr. Barnes opined that plaintiff "was able to work part-time for 4 hours without any accommodations."  Admin. Rec. at 1459.

[24]Admin. Rec. at 21-22.

[25]Admin. Rec. at 21-22.  These opinions are all discussed below in detail.

[26]Admin. Rec. at 22.

[27]Admin. Rec. at 23.

[28]Admin. Rec. at 23.

[29]Admin. Rec. at 24.

-8-

the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred as to PAC Moore's opinion. Moore was one of plaintiff's treating providers. On May 5, 2018, Moore opined that plaintiff could never climb, lift more than 10 pounds, or use her hands for fine or gross manipulation; could not raise either arm over her shoulder; would be off task at least 70% of the day due to pain;

would need unscheduled breaks during the workday; and needs a cane to ambulate.[30]  The

ALJ found Moore's opinion unpersuasive because Moore provided "a meager explanation

in  support of very significant restriction in functioning" and because Moore's opinion was

"inconsistent with the evidence of record as a whole[.]"[31]

      An ALJ "must consider all medical opinions and 'evaluate their persuasiveness' based

on 'supportability' and 'consistency' using the factors specified in the regulations." Tanya

L. L. v. Comm'r of Soc. Sec., 526 F. Supp. 3d 858, 2021 WL 981492, at *4 (D. Or. 2021)

(quoting 20 C.F.R. § 404.1520c(c)).  "Those factors include 'supportability,' 'consistency,'

'relationship with the claimant,' 'specialization,' and 'other factors.'" Id. (quoting 20 C.F.R.

§ 404.1520c(c)).  "The factors of 'supportability' and 'consistency' are considered to be 'the

most important factors' in the evaluation process."  Id. (quoting 20 C.F.R. § 404.1520c(c)).

The ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive

[he found] all of the medical opinions.'"  Id. (quoting 20 C.F.R. § 404.1520c(a) and (b)(1)).

"The ALJ also is required to 'explain how [he] considered the supportability and consistency

factors' for a medical opinion."  Id. (quoting 20 C.F.R. § 404.1520c(b)(2)).  "Accordingly,

to determine the persuasiveness of a medical opinion the court must evaluate whether the

ALJ properly considered the factors as set forth in the . . . regulations."  Id.  "[T]he ALJ's

reasoning must [be] legitimate, meaning lawful or genuine, as it must . . . be supported by

---

[30]Admin. Rec. at 1503-1504.

[31]Admin. Rec. at 22.

substantial evidence and free from legal error[.]" <u>Tina T. v. Comm'r of Social Security</u>, Case No. C19-6215 BHS, 2020 WL 4259863, at *4 (W.D. Wash. July 24, 2020).

As for supportability, the ALJ found that Moore only provided a meager explanation in support of his opinion, explaining that Moore did not provide any "medical basis" for his opinion, "such as observed signs on exam."[32] The ALJ did not cite to any evidence in support of his supportability finding. Rather, the ALJ only made the foregoing conclusory finding.

Defendant, however, argues that it was sufficient that the ALJ cited to Moore's treatment notes in a different part of his decision. In his discussion of the medical evidence, the ALJ cited to Moore's treatment notes for the proposition that plaintiff generally "demonstrated a normal gait with no sensory or motor deficit, as well as, no muscle atrophy or tremor observed. . . ."[33] More specifically, the ALJ cited a July 24, 2017 treatment note, in which it was observed that plaintiff had "good muscle tone[. N]o muscle atrophy."[34] The ALJ also cited a September 26, 2017 treatment note, in which it was noted that on exam, plaintiff had "fairly good muscle tone and no obvious muscle atrophy. . . . Cranial nerves II through XII are grossly normal. She has no obvious deficits during this evaluation. Her grip

---

[32]Admin. Rec. at 22.

[33]Admin. Rec. at 17.

[34]Admin. Rec. at 787.

-11-

strength is strong bilaterally. Her gait is steady with no lateralizing signs."[35] And, the ALJ cited to a treatment note from November 15, 2017, in which it was noted that on exam, plaintiff had "good muscle tone[. N]o muscle atrophy" and a steady gate.[36] Defendant argues that this is substantial evidence supporting the ALJ's supportability finding as to Moore's opinion.

It is not sufficient for the ALJ to make a conclusory finding that a medical opinion is unsupported, which is what the ALJ did here. The ALJ may have cited to evidence in a different part of his decision, but the ALJ did nothing to connect that evidence to his supportability finding. As the Ninth Circuit has explained, "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision." Bray, 554 F.3d at 1226. The ALJ not only failed to cite to any evidence, he also failed to explain, in any detail, his reasoning for finding Moore's opinion unsupported, as illustrated, in part, by the fact that the ALJ considered Moore's opinion in the same paragraph as ANP Brock's and Dr. Barnes' opinions.

As for consistency, the ALJ found that Moore's opinion was "inconsistent with the evidence of record as a whole, including physical and mental status exams and activities the claimant performed."[37] This was not a proper evaluation of Moore's opinion but rather was

---

[35]Admin. Rec. at 780.

[36]Admin. Rec. at 776.

[37]Admin. Rec. at 22.

simply a conclusion by the ALJ. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations [of the evidence] and explain why they, rather than the doctors', are correct." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ failed to explain why his interpretation of the medical evidence, rather than Moore's, was correct. The ALJ cited to some evidence in the record in support of his finding that Moore's opinion was inconsistent, but the ALJ did not explain how this evidence contradicted Moore's opinion. The ALJ cited to plaintiff's May 8, 2018, ten-page function report,[38] but the ALJ did not explain what portions of the function report contradicted Moore's opinion. The ALJ also cited to the seven-page report from Dr. Rose,[39] but the ALJ again failed to provide an explanation as to which portions of this report contradicted Moore's opinion. Moreover, parts of Dr. Rose's report support Moore's opinion. For example, Dr. Rose noted that plaintiff's fine and gross motor movements were slow or delayed,[40] which is consistent with Moore's opinion that plaintiff could never use her hands for fine or gross manipulation because her stroke affected her right upper extremities.[41]

---

[38]Admin. Rec. at 301-309.

[39]Admin. Rec. at 417-423.

[40]Admin. Rec. at 417.

[41]Admin. Rec. at 1503.

The ALJ also cited to several pages of treatment notes from Dr. Osterbauer,[42] all of which contain the results of his physical examinations, which were generally normal.[43] These treatment notes, however, have to do with the treatment of plaintiff's epilepsy, which was generally well-controlled, and which was not the basis of Moore's opinion. Moore opined that plaintiff's limitations were based on a history of stroke and resulting convulsions, tremors, confusion, and fatigue.[44] The fact that plaintiff's epilepsy was well-controlled does not mean that she was not as limited as Moore opined. In addition, Dr. Osterbauer's treatment notes actually provide some support for Moore's opinion. For example, in the September 1, 2017 treatment notes, Dr. Osterbauer noted that plaintiff felt

> that she has been moving rather slowly since [the last appointment] and has also noted dizziness on standing. Orthostatics performed today were negative. She and her mother have both noticed a decrease in a desire to be around people and difficulty with memory and cognition since her stroke in 2014. These are both likely a function of the stroke as well as possible medication effect.[[45]]

These notes are consistent with Moore's opinion, which was based on limitations flowing from plaintiff's stroke.

---

[42]Dr. Osterbauer was a neurologist who primarily treated plaintiff's epilepsy.

[43]Admin. Rec. at 1022, 1025, 1028, 1031, 1043, 1057, 1061.

[44]Admin. Rec. at 1503.

[45]Admin. Rec. at 1061.

-14-

Defendant points out that Moore stated that plaintiff had convulsions, tremors, and confusion and argues that these symptoms are not reflected in the record. But, there are indications in the record that plaintiff had tremors at times.[46] Defendant also argues that it is hard to understand how plaintiff could be off task 70% of the day, as Moore opined, but still be able to volunteer at the cat shelter for 4-6 hours almost every day. But, plaintiff testified that she could take breaks and play with the kittens, thereby suggesting that this volunteer work did not place the same demands on plaintiff as a full-time job in a competitive work environment would.

Although the ALJ made findings as to the supportability and consistency of Moore's opinion, as he was required to do under the new regulations dealing with medical opinions, these findings were conclusory and not supported by substantial evidence. Thus, the reasons the ALJ gave for finding Moore's opinion unpersuasive were not legitimate, which means the ALJ erred as to Moore's opinion.

Plaintiff next argues that the ALJ erred as to ANP Brock's opinion. Brock was plaintiff's mental health treating provider. On April 13, 2018, Brock opined that plaintiff could not reasonably be expected to work an 8 hour day, 40 hour work week, on a regular basis, without missing more than 2 days a month; had moderate limitations as to her ability to understand/remember/carry out very short simple instructions, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting

---

[46]Admin. Rec. at 408, 439, 782, 795, 803.

behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness; had marked limitations as to her ability to understand/remember/ carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and be aware of normal hazards and take appropriate precautions; and extreme limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and tolerate normal levels of stress.[47]

The ALJ discounted Brock's opinion for the same reasons he discounted Moore's opinion, finding that Brock only provided a meager explanation in support of her opinion and that Brock's opinion was "inconsistent with the evidence of record as a whole, including physical and mental status exams and activities the claimant performed."[48] Plaintiff argues that these were not legitimate reasons for the ALJ to find Brock's opinion unpersuasive.

---

[47]Admin. Rec. at 943-945.

[48]Admin. Rec. at 22.

The ALJ found that Brock's opinion was not supported, but Brock's opinion was supported by her treatment notes. Brock saw plaintiff at least once a month from February 2016 through the date of Brock's May 2018 opinion. Brock's treatment notes provide more than sufficient support for her opinion.

Defendant's argument that Brock's treatment notes did not support her opinion fails. Defendant points out that there were times that plaintiff's objective exam was relatively normal. But there were other times when plaintiff's objective exam was not relatively normal. For example, on September 22, 2017, Brock's objective exam showed, among other things, that plaintiff had an "abrupt switch to intense anger late in the visit" that her affect ranged from "serious to euthymic to abruptly tearful to angry," that her mood was "'overwhelmed' 'trapped,'" and that her insight was fair/variable.[49] The Ninth Circuit has observed that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). The fact that plaintiff, at times, seemed to be doing better in terms of functioning does not mean that Brock's opinion was unsupported by her treatment notes.

The ALJ also found that Brock's opinion was not consistent with the medical evidence of record. In support of this finding, the ALJ noted that in Brock's treatment notes

---

[49]Admin. Rec. at 970.

from just before she rendered her opinion, plaintiff had "reported she was finding projects to do and her house was cleaner. . . ."[50] The ALJ also noted that Brock "indicated improved function overall, noting improved concentration with increased medication. . . ."[51] These treatment notes, however, are not substantial evidence supporting the ALJ's consistency finding.

On March 16, 2018, plaintiff reported that she was "[f]inding projects she can do. Was able to get her computer mouse to work again and clean up her desk. Feels like she is being a good mom. House is cleaner."[52] And, Brock noted that plaintiff had "[i]mproved function overall. Improved daily function at home, improved concentration/task ability with increased dose methylphenidate."[53] While the March 16, 2018, treatment notes do indicate that plaintiff's functioning was improving, citation to one treatment note disregards the longitudinal treatment history between Brock and plaintiff, which, under the regulations, the ALJ should consider. And, as plaintiff points out, these treatment notes also show that her insight was "fair to good" and that her affect was still mildly restricted,[54] which indicates that

---

[50]Admin. Rec. at 22.

[51]Admin. Rec at 22 (citing to Admin. Rec. at 955-956).

[52]Admin. Rec. at 952.

[53]Admin. Rec. at 955.

[54]Admin. Rec. at 952.

-18-

even when her functioning was improved, she was still having difficulties due to her mental impairment.

In addition to citing to one treatment note from Brock, the ALJ, in support of his consistency finding, cited the same evidence he cited in connection with Moore's opinion, namely plaintiff's function report, Dr. Rose's report, and Dr. Osterbauer's treatment notes. This evidence, however, provides little to no support for the ALJ's finding that Brock's opinion was inconsistent with the medical evidence of record.

As for the ALJ's reliance on plaintiff's function report, the ALJ did not explain how Brock's opinion was contradicted by plaintiff's function report. Moreover, plaintiff's function report actually supported Brock's opinion. For example, plaintiff reported being scatterbrained and having difficulty following directions, having to "constantly keep looking at [the] instructions."[55] This is consistent with Brock's opinion that she had difficulties with understanding and remembering simple instructions.[56]

Defendant points out that in this same function report, plaintiff reported that she often went to a thrift store as doing so relaxed her, went for coffee with friends, and took her children to school[57] and that plaintiff testified that she volunteered at a cat rescue often, for

---

[55]Admin. Rec. at 305-306.

[56]Admin. Rec. at 944.

[57]Admin. Rec. at 305.

4 to 6 hours at a time.[58]  Defendant insists that these daily activities are inconsistent with Brock's opinion.

But these daily activities are not inconsistent with Brock's opinion.  The fact that plaintiff might have gone to the thrift store on a regular basis does not mean that she did not have the limitations Brock assessed, which had to do with plaintiff's ability to perform in a work environment.  Plaintiff did not state how long she stayed at the thrift store or who she interacted with when she went there.  The same is true as for plaintiff taking her kids to school or having coffee with friends.  Plaintiff's ability to do these activities has little, if anything, to do with whether she would be able to do such things as maintain concentration, accept criticism from supervisors, or show up to work on time every day.  As for plaintiff's volunteer work at the cat rescue, plaintiff's description of this volunteer work indicates that she could work at her own pace and take breaks whenever she wanted, which she would not be able to do in a competitive employment environment.

Brock's opinion was also not necessarily inconsistent with Dr. Rose's opinion.  For example, Dr. Rose found that plaintiff's short term memory was fair,[59] which was consistent with Brock's opinion that plaintiff had difficulty remembering short and simple instructions.[60]  Dr. Rose also found that plaintiff had "some difficulties maintaining

---

[58]Admin. Rec. at 65.

[59]Admin. Rec. at 421.

[60]Admin. Rec. at 944.

-20-

appropriate social and interpersonal functioning[,]"[61] which was consistent with Brock's opinion that plaintiff had moderate to extreme limitations in all areas of social interaction.[62]

As for the ALJ's citation to Dr. Osterbauer's treatment notes, these notes have little to do with Brock's opinion, which was based on plaintiff's mental impairments, rather than her physical impairments. That said, even these treatment notes are consistent with Brock's opinion. For example, in the October 6, 2017 treatment notes, although plaintiff's physical exam was unremarkable, in the review of systems, it was noted that plaintiff had "[c]hronic, intermittent suicidal ideation[.]"[63]

In sum, the reasons the ALJ gave for finding Brock's opinion unpersuasive were not legitimate. The ALJ erred as to Brock's opinion.

Plaintiff next argues that the ALJ erred as to Dr. Rose's opinion. Dr. Rose did a diagnostic evaluation of plaintiff on August 18, 2016.[64] Dr. Rose opined that plaintiff's

> ability to understand, retain and follow instructions and sustain attention to perform simple repetitive tasks is moderately impaired. Concentration, persistence and pace also appear to be moderately impaired. Although she did not complete formal cognitive or intellectual assessment, she appears to be functioning within the low average range of intelligence, but she does have some short-term memory deficits and becomes confused at times. There are no restrictions on daily activities, and she

---

[61]Admin. Rec. at 422.

[62]Admin. Rec. at 944.

[63]Admin. Rec. at 1056.

[64]Admin. Rec. at 417.

reported she is able to care for her daughter and grandson. She has some difficulties maintaining appropriate social and interpersonal functioning due to her Mood Disorder and psychosocial frictions. There are indications from the assessment findings she experiences some emotional frustrations in work-like situations, but she has been able to work successfully over the past several years. She seems able to respond appropriately to coworkers and the public, but she did have an apparent personality conflict with her supervisor/manager at her last place of employment. Her ability to perform functional activities such as sitting, standing, moving about, lifting, carrying and handling objects appears limited but not precluded. Her ability to manage funds independently appears marginal.[65]

The ALJ discounted Dr. Rose's opinion because he "did not explain the functional impact of claimant's mental impairment, but rather indicated moderate impairments, such as in the ability to understand, retain, and follow instructions, and sustain attention to perform simple, repetitive tasks."[66]

First of all, plaintiff argues that the ALJ failed to explain how he had considered supportability and consistency, which are the two most important factors for the ALJ to consider when evaluating medical opinions. Secondly, plaintiff argues that the ALJ's reasoning makes no sense. Dr. Rose plainly stated that plaintiff's "ability to understand, retain and follow instructions and sustain attention to perform simple repetitive tasks is moderately impaired. Concentration, persistence and pace also appear to be moderately

---

[65]Admin. Rec. at 422-423.

[66]Admin. Rec. at 21.

-22-

impaired."[67]  Plaintiff contends that these are definitive limitations assessed by Dr. Rose using the five-point rating scale used by defendant to evaluate mental impairments.  See 20 C.F.R. § 404.1520a(c)(4) ("When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme.").  Plaintiff points out that Dr. Buechner, whose opinion the ALJ found persuasive, used much the same language as Dr. Rose when assessing plaintiff's limitations, opining that plaintiff had moderate limitations in understanding, remembering, and applying information; generally moderate limitations but sometimes marked limitations in terms of interacting with others; moderate limitations as to concentration, persistence, and pace; and moderate limitations in terms of adapting and managing the self.[68]  Plaintiff argues that it was inconsistent for the ALJ to find Dr. Rose's opinion unpersuasive but find Dr. Buechner's opinion persuasive.

There is, however, a difference between Dr. Rose's opinion and Dr. Buechner's opinion in that Dr. Buechner translated these general limitations into specific functional limitations.  Dr. Buechner testified that plaintiff would be limited to "no contact with the public and no constant teamwork.  Probably just occasional contact with coworkers and supervisors. . . .  [L]imit[ed] to routine tasks and . . . moderately simple instructions, routine

---

[67]Admin. Rec. at 422.

[68]Admin. Rec. at 51.

instructions. . . . [L]ow stress environment . . . where there aren't high productivity requirements."[69] And, as defendant points out, an ALJ may reject an opinion that does not "translate" symptoms "into specific functional deficits which preclude work activity." Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

The ALJ's reason for finding Dr. Rose's opinion unpersuasive was legitimate. The ALJ did not err as to Dr. Rose's opinion.

Because the ALJ erred as to Moore's and Brock's opinions, the court must decide whether to remand this matter for further proceedings or for an immediate award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must

---

[69]Admin. Rec. at 52-53.

conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

In this case, a remand for an award of benefits is appropriate. The ALJ erred as to the opinions of Moore and Brock. Moore opined that plaintiff would be off task at least 70% of the day due to pain and would need unscheduled breaks during the workday.[70] The vocational expert testified that there would be no full time unskilled work for someone who was off task 15 percent or more of the day.[71] Thus, further administrative proceedings would not be necessary as to Moore's opinion, and if Moore's opinion were credited as true, the ALJ would be required to find plaintiff disabled. As for Brock's opinion, given the number of marked and extreme limitations she assessed, plaintiff would be "unable to engage in sustained work activity for a full eight-hour workday, five-day workweek, 40-hour workweek, or in the equivalent type of schedule on a regular and continuing basis."[72] The

---

[70]Admin. Rec. at 1504.

[71]Admin. Rec. at 75.

[72]Admin. Rec. at 74.

vocational expert testified that such an individual "would not be able to maintain full-time work."[73] Thus, further administrative proceedings would not be necessary as to Brock's opinion, and if Brock's opinion were credited as true, the ALJ would be required to find plaintiff disabled.

Conclusion

The Commissioner's decision is reversed and this case is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 21st day of October, 2021.

/s/ H. Russel Holland
United States District Judge

---

[73]Admin. Rec. at 74.